1  DENNIS J. HERRERA, State Bar #139669
   City Attorney
2  JOANNE HOEPER, State Bar #114961
   Chief Trial Attorney
3  SEAN F. CONNOLLY, State Bar # 152235
   Deputy City Attorney
4  Fox Plaza
   1390 Market Street, 6th Floor
5  San Francisco, California 94102-5408
   Telephone:     (415) 554-3863
6  Facsimile:     (415) 554-3837
   E-Mail:        sean.connolly@sfgov.org

8  Attorneys for Defendant
   CITY AND COUNTY OF SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTHER HWANG,<br><br>        Plaintiff,<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, ET AL.<br><br>        Defendants. | Case No. C07-02718 MMC<br><br>**DEFENDANT CITY AND COUNTY OF SAN FRANCISCO, CHIEF OF POLICE HEATHER FONG, OFFICER SERNA AND OFFICER ARTIGA'S NOTICE AND MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT**<br><br>Hearing Date: September 12, 2008<br>Time:        9:00 a.m.<br>Place:       Judge Maxine M. Chesney,<br>              Courtroom 7, 19th Floor,<br>              San Francisco, CA<br><br>Trial Date:   October 27, 2008 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii
NOTICE OF MOTION ......................................................................................................... 1
INTRODUCTION ................................................................................................................. 1
FACTS .................................................................................................................................. 2
ARGUMENT ........................................................................................................................ 4
    I.    THE SUMMARY JUDGMENT STANDARD ........................................................ 4
    II.   DEFENDANTS HAD PROBABLE CAUSE TO BELIEVE PLAINTIFF WAS DRUNK IN PUBLIC ................................................................................................ 5
    III.  DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY FOR ARRESTING PLAINTIFF ........................................................................................ 6
    IV.  DEFENDANTS ARE NOT LIABLE UNDER STATE LAW FOR FALSE ARREST, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, OR NEGLIGENCE BECAUSE THEY ARE IMMUNE FROM SUIT FOR ARRESTS MADE WITH PROBABLE CAUSE ...................................................... 8
        A.   Government Code Section 821.6 Provides Absolute Immunity For State Law Claims. ................................................................................................ 8
        B.   Plaintiff's Claim of Intentional Infliction of Emotional Distress Fails Because She Cannot Present Evidence That She Suffered Severe or Extreme Emotional Distress. ................................................................... 9
    V.   PLAINTIFF'S SEVENTH CAUSE OF ACTION UNDER CIVIL CODE 51.7 FAILS BECAUSE PLAINTIFF CAN PRESENT NO EVIDENCE OF RACIAL ANIMUS .................................................................................................. 10
    VI.  PLAINTIFF'S EIGHTH CAUSE OF ACTION UNDER CIVIL CODE 52.1 FAILS BECAUSE THERE IS NO EVIDENCE THAT THE OFFICERS' USE OF FORCE WAS INTENDED TO INTERFERE WITH ANOTHER RIGHT .... 10
    VII. DEFENDANTS' STATE LAW IMMUNITIES BAR PLAINTIFF'S CLAIMS UNDER CIVIL CODE §§ 52.1 ....................................................................... 12
    VIII. PLAINTIFF HAS NO EVIDENCE TO SUPPORT HER *MONELL* CLAIM AGAINST THE CITY OR CHIEF FONG ............................................................. 13
    IX.  PLAINTIFFS LACK EVIDENCE TO SUPPORT A PUNITIVE DAMAGES CLAIM ................................................................................................................... 14
CONCLUSION ................................................................................................................... 14

# TABLE OF AUTHORITIES

**Federal Cases**

*Anderson v. Creighton*
   483 U.S. 635 (1987)...................................................................................................7

*Anderson v. Liberty Lobby, Inc.*
   477 U.S. 242 (1986)...................................................................................................4

*Atwater v. Lago Vista*
   532 U.S. 318 (2001)...................................................................................................8

*Barlow v. Ground*
   943 F.2d 1132 (9th Cir. 1991),
   cert. denied, 505 U.S. 1206 (1992)............................................................................5

*Bhan v. NME Hosps., Inc.*
   929 F.2d 1404 (9th Cir. 1991) ...................................................................................5

*Board of County Comm'rs of Bryan County v. Brown*
   520 U.S. 397 (1997).................................................................................................13

*Caballero v. City of Concord*
    956 F.2d 204 (9th Cir. 1992) ....................................................................................7

*Celotex Corp. v. Catrett*
   477 U.S. 317 (1986)...................................................................................................4

*Clement v. Gomez*
   298 F.3d 898 (9th Cir. 2002) .....................................................................................7

*Dang v. Cross*
   422 F.3d 800 (9th Cir. 2005) ...................................................................................14

*Graham v. Connor*
   490 U.S. 386 (1989)...................................................................................................7

*Harlow v. Fitzgerald*
   457 U.S. 800 (1982)...................................................................................................7

*Haugen v. Brosseau*
    351 F.3d 372 (9th Cir. 2003) ..................................................................................14

*Hunter v. Bryant*
   502 U.S. 224 (1991)...................................................................................................7

*Illinois v. Gates*
   462 U.S. 213 (1983)...................................................................................................5

*In re First Alliance Mortgage Co.*
   471 F.3d 977 (9th Cir. 2006) ..................................................................................................14

*Justin v. City and County of San Francisco*
   2008 WL 1990819 (N.D.Cal. 2008) .......................................................................................11

*McDade v. West*
   223 F.3d 1135 (9th Cir. 2000) ................................................................................................13

*Mendocino Environmental Center v. Mendocino County*
   14 F.3d 457 (9th Cir. 1994) ......................................................................................................7

*Michigan v. DeFillippo*
   443 U.S. 31 (1979) ....................................................................................................................5

*Monell v Dep't of Social Services*
   436 U.S. 658 (1978) ..............................................................................................1, 2, 4, 13, 14

*Moore v. Baca*
   2002 WL 31870541 (C.D.Cal. 2002) .....................................................................................12

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*
   210 F.3d 1099 (9th Cir. 2000) ..................................................................................................4

*Reynolds v. City. of San Diego*
    84 F.3d 1162 (9th Cir. 1996) .................................................................................................11

*Rios v. City of Fresno*
   2006 WL 3300452 (E.D.Cal. 2006) ........................................................................................11

*Santiago v. Fenton*
   891 F.2d 373 (1st Cir. 1989) ...................................................................................................14

*Saucier v. Katz*
   533 U.S. 194 (2001) ..................................................................................................................7

*Scott v. Harris*
   127 S.Ct. 1769 (2007) ............................................................................................................5, 6

*United States v. Valencia*
   24 F.3d 1106 (9th Cir. 1994) ....................................................................................................5

**State Cases**

*Amylou R. v. County of Riverside*
   28 Cal.App.4th 1205 (1994) .....................................................................................................9

*Baughman v. State of California*
   38 Cal.App.4th  182 (1995) ......................................................................................................9

*Caldwell v. Montoya*
  10 Cal.4th 972 (1995) ................................................................................................12

*Cervantez v. J.C. Penney Co.*
  24 Cal.3d 579 (1979) ..................................................................................................9

*Christensen v. Superior Court*
  54 Cal.3d 868 (1991) ..................................................................................................9

*City & Cty. of San Francisco v. Ballard*
  136 Cal.App.4th 381 (2006) ......................................................................................11

*Cole v. Fair Oaks Fire Protection Dist.*
  43 Cal.3d 148 (1987) ..................................................................................................9

*Gates v. Superior Court*
  32 Cal.App.4th 481 (1995) ...................................................................................8, 12

*In re Joseph G.*
  7 Cal.App.3d 695 (1970) ............................................................................................6

*In re William G.*
  107 Cal.App.3d 210 (1980) ........................................................................................6

*Jones v. Kmart Corp.*
  17 Cal.4th 329 (1998) ..........................................................................................10, 11

*Nally v. Grace Community Church*
  47 Cal.3d 278 (1988) ..................................................................................................9

*O'Toole v. Superior Court* (*San Diego Comm. Coll. Dist.*)
  140 Cal.App.4th 488 (2006) ........................................................................................8

*People v. Goldberg*
  2 Cal.App.3d 30 (1969) ..............................................................................................6

*People v. Longwill*
  14 Cal.3d 943 (1975) ..................................................................................................6

*People v. Murrietta*
  251 Cal.App.2d 1002 (1967) ......................................................................................6

*People v. Sanchez*
  174 Cal.App.3d 343 (1985) ........................................................................................6

*People v. Superior Court*
  15 Cal.App.3d 146 (1971) ..........................................................................................8

*Potter v. Firestone Tire & Rubber Co.*
  6 Cal.4th 965 (1993) ..................................................................................................9

*Scannell v. County of Riverside*
　152 Cal.App.3d 596 (1984) ...............................................................................................9

**Federal Statutes**

42 USC § 1983..................................................................................................................1, 13

Fed. Rule Civ. Proc. 56......................................................................................................4

**State Statutes & Codes**

Cal. Civil Code § 51, et seq. ...............................................................................................12

Cal. Civil Code § 51.7..................................................................................................1, 8, 10

Cal. Civil Code § 52.1.........................................................................................1, 8, 10, 11, 12

Cal. Civil Code § 52.1(a) ....................................................................................................10

Cal. Government Code § 820.2..........................................................................................12

Cal. Government Code § 821.6.....................................................................................8, 9, 12

Cal. Government Code § 844. 6.........................................................................................12

Cal. Government Code § 12900, et seq. ............................................................................12

Cal. Penal Code § 647(f)..................................................................................................5, 6

Cal. Penal Code § 847.........................................................................................................8

Penal Code § 415 ................................................................................................................5

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Friday, September 12, 2008, at 9:00 a.m., or as soon thereafter as can be heard by the above-entitled Court, in the Courtroom of the Honorable Maxine M. Chesney, Defendants City and County of San Francisco, Nelson Artiga, Jesse Serna, Chief Fong, *et al*. will and hereby do move for summary judgment or partial summary judgment on the grounds that: (1) there exists no genuine issue of fact as to false arrest, (2) the officers have qualified immunity for any arrest, (3) there is no evidence supporting any theory of liability under *Monell v Dep't of Social Services*, 436 U.S. 658 *(*1978*)*, and (4) no cause of actions exists for any state law cause of actions.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, the pleadings and papers on file herein, and upon such other matters as may be presented to the Court at the time of the hearing.

**INTRODUCTION**

Plaintiff in this case alleges federal claims under 42 USC § 1983 for false arrest, use of excessive force, unspecified theories under *Monell*, and state law claims for assault and battery, false imprisonment, intentional infliction of emotional distress, negligence, and claims under Civil Code §51.7 and 52.1.

Plaintiff was arrested for being drunk in public and for battery on a police officer. The record as a whole proves plaintiff was intoxicated at the time of the incident. While plaintiff maintained she consumed only a small amount of alcohol, her boyfriend testified that plaintiff had consumed no fewer than five alcoholic drinks at the time of the incident and was clearly intoxicated. An independent witness to the incident testified that plaintiff was obviously drunk. The defendant police officers also observed plaintiff drunk in public and attempted to arrest her at which point she resisted and assaulted them.

Based on the facts as determined by the record as a whole, defendants had probable cause to arrest plaintiff, or alternatively are entitled to qualified immunity because a reasonable police officer could have found cause to arrest plaintiff for being drunk in public and assaulting a police officer. Additionally, because the officers were justified in arresting plaintiff her attendant state law claims

1  should fail.  Further, plaintiff's state law claims fail for lack of evidence.  Lastly, plaintiff has
2  developed no evidence of liability under any *Monell* theory.

## FACTS

Plaintiff, Esther Hwang, was arrested on May 12, 2007, in San Francisco, for being drunk and disorderly, resisting arrest, and battery on a police officer.  (Declaration of Officer Nelso Artiga ("Artiga Decl.") ¶3.)  The incident giving rise to the arrest began outside a liquor store on Broadway Street in the North Beach area after plaintiff and her boyfriend left a nearby club.  The incident started after plaintiff, who had been drinking, approached police officers to inquire about jaywalking.  Plaintiff insists she was not drunk and that the only alcohol she consumed the night of the incident was in the form of one half pint of pear cider (See Declaration of Sean F. Connolly ("Connolly Decl.") in Support of Motion for Summary Judgment, Exhibit "B," Deposition of plaintiff Eshter Hwang (hereinafter "Hwang Dep.") 157-160).

Plaintiff's boyfriend, Nathan Flores, who was with her throughout the evening, testified that plaintiff drank *three* glasses of wine at dinner, and consumed another *two* pints of an "alcoholic fruit drink" -pear cider- at the bar before plaintiff was arrested.  (See Connolly Decl., Exh. "C," Deposition of Nathan Flores ("Flores Dep."), 75-77, 82:14, 100-103.)  Flores' recollection of what plaintiff drank was specific because he had either bought plaintiff the drinks, or poured them for her. (Flores Dep., 76-77, 83-85, 100-103.)  Flores has also worked as a bartender. (Flores Dep., 108:14, 111:17.)  Additionally, Flores was concerned that plaintiff's consumption of alcohol would not mix well with the medication she was on (Flores Dep., 77:11) and testified that plaintiff tends to "lose control" when she drinks (Flores Dep., 82:1-3).  Flores also testified that plaintiff was intoxicated at the time of the incident (Flores Dep., 111).  Flores described plaintiff as being red and flush in the face, unsteady on her feet, and agitated (Flores Depo., 111).  Flores testified that he and plaintiff had a minor verbal disagreement on the sidewalk outside of the nightclub, where she was arrested, over the amount of alcohol she was drinking (Flores Dep., 105:11-15, 111:1-5).

Defendants are police officers who were assigned to patrol the Broadway corridor in North Beach.  (Artiga Decl., ¶2.)  The objectives of their patrol include keeping the peace, preventing injury due to drunkenness, and enforcing laws against drunk and disorderly behavior.  While on patrol the

1  defendant officers first noticed plaintiff involved in a verbal argument with her companion on the
2  sidewalk outside a nightclub. (Artiga Decl., ¶4.) Plaintiff appeared extremely intoxicated. (Decl.
3  Artiga Decl., ¶5 .) Officers observed plaintiff with bloodshot eyes, dilated pupils, flushed red skin,
4  and unsteady on her feet. (Artiga Decl., ¶5.) Plaintiff then approached officers and asked if she
5  could cross Broadway Street illegally. (Artiga Decl., ¶6.) One of the officers present informed
6  plaintiff not to jaywalk as it would be dangerous, especially given that she was intoxicated. (Artiga
7  Decl., ¶ 6.) Plaintiff responded that she dated the Mayor, implying she couldn't be arrested. (Artiga
8  Decl., ¶6.) Artiga also noticed plaintiff's speech was slurred (Artiga Decl., ¶7) and that she had a
9  strong smell of alcohol emanating from her (Artiga Decl., ¶7). The officers feared that due to her
10 obvious signs of intoxication, and threat to jaywalk, that she was a danger to herself or others.
11 (Artiga Decl., ¶8.)

12       Plaintiff admits that shortly before she was arrested she said to the officers "I guess you'd have
13 to do something to me if I tried to cross the street" (Hwang Dep., 188:11). She also understood that it
14 was illegal to cross the street in that area (Hwang Dep., 189:17). Based on their observations, the
15 officers believed they had probable cause that plaintiff was drunk in public and unable to care for
16 herself, and arrested her (Artiga Decl., ¶9).

17       As the officers attempted to place her in custody, plaintiff resisted arrest and forcibly stomped
18 on Officer Artiga's foot (Artiga Decl., ¶10). No officer made any derogatory or vulgar remark to
19 plaintiff at any time (Artiga Decl., ¶11).

20       Independent witness Eugene Ainsworth testified that he was in the liquor store that plaintiff
21 entered and saw that she was clearly drunk (See Connolly Decl., Exh. "D," Deposition of Eugene
22 Ainsworth ("Ainsworth Dep.") 23:3-20). He watched plaintiff leave the liquor store, approach the
23 officers and say something to them. Although he did not initially hear what she said, he testified that
24 the officer's response was, "If I let you go, and you get hurt, then I'm at fault (Ainsworth Dep., 15:24).
25 Ainsworth then testified that plaintiff approached a second officer and asked if she could "cross the
26 street there" to which the officer replied, "No" (Ainsworth Dep., 16:6). Ainsworth then heard
27 plaintiff's boyfriend suggest that they use the crosswalk at the corner to which plaintiff replied, "I
28 don't want to go to the fucking corner" (Ainsworth Dep., 19:13-15). Ainsworth then saw plaintiff

walk up to Officer Serna and start yelling at him, "right up against him" (Ainsworth Dep., 26:20) "right up into his face" (Ainsworth Dep., 26:18).  Ainsworth saw Officer Artiga try to separate plaintiff from Officer Serna at which point plaintiff began kicking Officer Artiga (Ainsworth Dep., 28-30).  The officers tried to handcuff plaintiff but she continued to struggle.  (Ainsworth Dep. 31-32.)  The officers then walked her backwards until she was off-balance and "lowered her down to the sidewalk." (Ainsworth Dep., 31:12).

Plaintiff does not claim that any officer kicked, punched, slapped, pepper sprayed or used a baton on her.  (Hwang Dep., 212.)  There have been no facts developed that would support any violation under a theory of *Monell*.

## ARGUMENT
### I. THE SUMMARY JUDGMENT STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. Proc. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Material facts that would preclude the entry of summary judgment are those which, under the applicable substantive law, may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

The moving party bears the burden of showing that there is no material factual dispute. *Celotex*, 477 U.S. at 324.  However, where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of showing that there is no material factual dispute by demonstrating that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325.  Summary judgment must be granted if San Francisco "show[s] that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos*., 210 F.3d 1099, 1102 (9th Cir. 2000).  The moving party is not required to produce evidence showing the absence of a material fact on such issues, nor must the moving party support its motion with evidence negating the non-moving party's claim.  *Id*.  If the moving party shows an absence of evidence to support the non-moving party's claim, the burden then shifts to the opposing party to produce "specific evidence, through

affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). A failure of proof concerning an essential element of the non-moving party's case renders all other facts immaterial. *Celotex*, 477 U.S. at 323.

Facts must be viewed in the light most favorable to the non-moving party *only if* there is a genuine dispute to those facts. *Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007)(emphasis added). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Id*. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

## II. DEFENDANTS HAD PROBABLE CAUSE TO BELIEVE PLAINTIFF WAS DRUNK IN PUBLIC

Here, the record is clear that plaintiff was intoxicated. Defendant police officers, an independent witness to the incident, and even plaintiff's own boyfriend substantiate the fact that plaintiff was visibly intoxicated. Penal Code section 647(f) makes it a crime to be drunk in public. Penal Code section 415 makes it a crime to disturb the peace.

"Probable cause to arrest exists when under the totality of the circumstances known to the arresting officer, a prudent person would conclude that there is a fair probability that the arrestee had committed or is committing a crime." *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991), cert. denied, 505 U.S. 1206 (1992). The Supreme Court has defined probable cause as the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 2632 (1979).

Probable cause requires only the probability of criminal activity, not some type of "prima facie" showing. *Illinois v. Gates*, 462 U.S. 213, 235, 103 S.Ct. 2317, 2330 (1983). "Probable cause can be established through the collective knowledge of the officers at the scene." *United States v. Valencia*, 24 F.3d 1106, 1108 (9th Cir. 1994)

Plaintiff's obvious signs of intoxication are sufficient cause to arrest her. *People v. Sanchez*, 174 Cal.App.3d 343, 348 (1985) (lawful arrest under 647(f) where defendant was visibly inebriated); *In re Joseph G.*, 7 Cal.App.3d 695 (1970) (slurred speech, boisterous conduct). Testimony that a person was "staggering very badly, very unsteady on his feet, his speech was slurred, eyes bloodshot, and there was a strong odor of alcoholic beverage on his person" even when contradicted by other evidence in the record, are sufficient to warrant placing plaintiff under arrest for violation of 647, subdivision (f). *In re William G.* 107 Cal.App.3d 210, 214, 165 Cal.Rptr. 587, 589 (1980) (See *People v. Longwill,* 14 Cal.3d 943, 945, 123 Cal.Rptr. 297 (1975)). The same symptoms are also grounds for the officer to conclude that plaintiff was unable to exercise care for her own safety. (*People v. Murrietta*, 251 Cal.App.2d 1002, 1004-1005, 60 Cal.Rptr. 56 (1967); see also, *People v. Goldberg* 2 Cal.App.3d 30, 34, 82 Cal.Rptr. 314 (1969).)

Here, the officers believed that plaintiff was intoxicated and a danger to herself or others. Officers observed plaintiff with bloodshot eyes, dilated pupils, flushed red skin, and being unsteady on her feet. Plaintiff approached officers and asked if she could cross Broadway Street illegally. The officers informed plaintiff not to jaywalk, as it would be dangerous, especially given that she was intoxicated. The officers had a genuine concern about her safety. Officers noticed plaintiff's speech was slurred and that she had a strong smell of alcohol emanating from her. Although the officers' observations alone are sufficient to justify the arrest, their testimony is corroborated by plaintiff's boyfriend, who confirms that plaintiff consumed five alcoholic drinks before she was arrested and that she was also taking medication. Independent witness Ainsworth also corroborates that plaintiff was visibly drunk at the time of the arrest. The record as a whole clearly indicates that plaintiff was intoxicated. *Scott v. Harris*, 127 S.Ct. at 1776.

### III. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY FOR ARRESTING PLAINTIFF

Even if there was insufficient probable cause, the officers would not be liable for false arrest because of qualified immunity. Qualified immunity shields government officials performing discretionary functions from civil liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable official would have known. *Anderson v.*

*Creighton*, 483 U.S. 635, 641 (1987).  Public officials acting under color of law are protected from "undue interference with their duties and from potentially disabling threats of liability by the principle of qualified immunity."  *Id.*  (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 806 (1982)).

In *Saucier v. Katz,* the United States Supreme Court set forth a two-part test to govern the qualified immunity analysis.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The threshold inquiry the Court explained, is whether "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  *Id.* at 201.  If they do not show a right was violated, the inquiry ends and summary judgment based on qualified immunity is appropriate.

The qualified immunity inquiry in a false arrest case is objective.  The Court focuses on "whether 'a reasonable officer could have believed that probable cause existed to arrest' the plaintiff."  *Mendocino Environmental Center v. Mendocino County,* 14 F.3d 457 (9th Cir. 1994) (quoting *Hunter v. Bryant* 502 U.S. 224 (1991)112).  "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable [arrest]; nor will an officer's good intentions make an objectively unreasonable [arrest] constitutional."  *Caballero v. City of Concord*, 956 F.2d 204, 206 (9th Cir. 1992) (quoting *Graham v. Connor* 490 U.S. 386, 397(1989) (brackets in *Caballero*).

The qualified immunity defense does not require a finding that probable cause exists.  In other words, even if the plaintiff's rights were violated under the Constitution, the officers are nonetheless immune from liability if they can show their mistake was objectively reasonable.  *Anderson v. Creighton* (1987) 483 U.S. 635,641-42; *Hunter,* 502 U.S. at 226.  The rationale underlying this immunity is the "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority" and to protect the police when they are required to make on the spot judgments in fast developing circumstances.  *Harlow v. Fitzgerald* (1982) 457 U.S. 800, 807.  Qualified Immunity thus "provides ample protection to all but the plainly incompetent or those who knowingly violate the law."  *Id.* at 342.   This serves to protect government officials from liability for good faith misjudgments and mistakes. *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002).

Even if plaintiff argues that there was insufficient probable cause to arrest plaintiff for public intoxication, the officers are immune from suit because a reasonable police officer knowing what facts were available to these defendant officers would have believed that an arrest was justified.

The crime of public drunkenness, or even jaywalking, would permit a custodial arrest under the Fourth Amendment. *See Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.")

Thus, plaintiff's claim for false arrest should fail.

## IV. DEFENDANTS ARE NOT LIABLE UNDER STATE LAW FOR FALSE ARREST, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, OR NEGLIGENCE BECAUSE THEY ARE IMMUNE FROM SUIT FOR ARRESTS MADE WITH PROBABLE CAUSE

The "immunity" standard under California law is similar to the federal standard. California Penal Code § 847 states that "no cause of action shall arise against any peace officer . . . for false arrest . . . when . . . the peace officer at the time of the arrest has reasonable cause to believe the arrest was lawful." *See also People v. Superior Court* (1971), 15 Cal.App.3d 146, 152. Here, because defendant officers had probable cause to arrest plaintiff for public drunkenness, they are immune from any state law tort arising out of that arrest.

### A. Government Code Section 821.6 Provides Absolute Immunity For State Law Claims.

Plaintiff states non-specific claims for negligence (Ninth Cause of Action) and intentional infliction of emotional distress (Sixth Cause of Action). California Government Code section 821.6 states in its entirety:

> A public employee is not liable for an injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause.

Section 821.6 immunizes the officers from liability for violations of Civil Code section 51.7 and 52.1. See *Gates v. Superior Court*, 32 Cal.App.4th 481, 513 (1995); *O'Toole v. Superior Court (San Diego Comm. Coll. Dist.)*, 140 Cal.App.4th 488, 504 (2006).

Although the California Government Code does not immunize police from liability for false arrest, assault and battery, state and federal courts have applied section 821.6 to numerous other torts,

including general negligence, conspiracy and intentional infliction of emotional distress.  *Scannell v. County of Riverside*, 152 Cal. App. 3d 596, 604, 608 (1984) (Sheriff's detective and county were immune from liability for malicious prosecution and intentional infliction of emotional distress based on the improper arrest and criminal prosecution that violated plaintiff's immunity agreement with the district attorney.); *Baughman*, 38 Cal. App. 4th at 192-93, (Section 821.6 bars negligence claims against police who destroyed computer disks belonging to a tenant who was not the target of the investigation during execution of a search warrant.); *Amylou R.*, 28 Cal. App. 4th at 1214 (Section 821.6 bars a rape victim's claims for negligence, slander, and negligent and intentional infliction of emotional distress based on conduct of the criminal investigation).

In the present case, the immunity applies because the state law causes of action (excluding assault, battery, false arrest and imprisonment) are based on injuries plaintiff allegedly suffered from being detained and arrested in a criminal investigation – *i.e*., the institution of criminal proceedings – and she alleges that the officers were acting in the course and scope of their employment with the City.  (See Connolly Decl., Exh. "A," First Amend. Compl. ("FAC") ¶8.)  San Francisco is therefore immune from liability for these claims for relief.

> **B.     Plaintiff's Claim of Intentional Infliction of Emotional Distress Fails Because She Cannot Present Evidence That She Suffered Severe or Extreme Emotional Distress.**

The elements of a cause of action for intentional infliction of emotional distress ("IIED") are well established.  In order to make out a prima facie case, the plaintiff must prove (1) extreme and outrageous conduct by the defendant with the intention of causing emotional distress, or reckless disregard of the probability of causing emotional distress; (2) the plaintiff's suffered *severe or extreme emotional distress*; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.  *Potter v. Firestone Tire & Rubber Co.*, 6 Cal 4th 965, 1001 (1993); *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991); *Nally v. Grace Community Church*, 47 Cal.3d 278, 300 (1988); *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal. 3d 148, 155 n.7 (1987); *Cervantez v. J.C. Penney Co.*, 24 Cal.3d 579, 593 (1979).  Here, plaintiff can present no evidence that she suffered severe or extreme emotional distress.

Plaintiff alleges that defendants made vile remarks to her (which defendants adamantly deny). However, even if true, isolated name calling in and of itself is not enough to support plaintiff's IIED claim. She must also show that the comment caused her severe and extreme emotional distress. She cannot. This cause of action must therefore be dismissed.

## V. PLAINTIFF'S SEVENTH CAUSE OF ACTION UNDER CIVIL CODE 51.7 FAILS BECAUSE PLAINTIFF CAN PRESENT NO EVIDENCE OF RACIAL ANIMUS

Plaintiff claims that defendants actions "was [sic] motivated by racial prejudice against plaintiff" because plaintiff was "readily recognizable as Asian American." (FAC ¶57.) However, there is no evidence in the case that the officers acted in any way that was motivated by racial prejudice.

A claim under Civil Code section 51.7 requires evidence that the challenged conduct was "committed … on account of" a protected characteristic. Plaintiff can point to no evidence that would tie defendants' conduct to her race. The claim is simply unfounded and should be dismissed.

## VI. PLAINTIFF'S EIGHTH CAUSE OF ACTION UNDER CIVIL CODE 52.1 FAILS BECAUSE THERE IS NO EVIDENCE THAT THE OFFICERS' USE OF FORCE WAS INTENDED TO INTERFERE WITH ANOTHER RIGHT

Civil Code section 52.1 prohibits conduct that interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state. Cal. Civil Code § 52.1(a).

Plaintiff alleges that defendants violated Civil Code §52.1, "in that they interfered with plaintiff's exercise and enjoyment of her civil rights, through use of wrongful and excessive force, and failure to make any proper or reasonable detention of said plaintiff." (FAC ¶61). The allegation is non-sensical and circular.

Plaintiff must show both "threats, intimidation and coercion" and an interference or attempted interference with a constitutional right. See *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 334 (1998) (§ 52.1 requires "an attempted or completed act of interference with a legal right, accompanied by a form of coercion"). Plaintiff wraps these separate elements into one, claiming that by using excessive

force under the Fourth Amendment, officers interfered with plaintiff's right to remain free from excessive force under the Fourth Amendment.

The Bane Act does not provide any substantive protections; instead it enables individuals to sue for violations of constitutional or statutory rights set forth elsewhere when those rights have been suppressed by "threats, intimidation, or coercion." *Reynolds v. City. of San Diego*, 84 F.3d 1162, 1170 (9th Cir. 1996). Plaintiffs fail to allege any separate intent or act of threat, intimidation, or coercion that caused the alleged constitutional violations. See J*ones v. Kmart Corp*., 17 Cal. 4th 329, 334 (1998) (holding that section 52.1 requires "an attempted or completed act of interference with a legal right, accompanied by a form of coercion"); *City & City. of San Francisco v. Ballard*, 136 Cal.App.4th 381, 407 (2006). Plaintiff does not allege that the officers intended by their use of force to interfere with a separate, affirmative right enjoyed by plaintiff. Therefore, section 52.1 does not apply. *Rios v. City of Fresno*, 2006 WL 3300452, *20 (E.D.Cal. 2006).

Judges in the Northern District have agreed: "Section 52.1 is only applicable when a defendant intends by his or her conduct to interfere with a separate, affirmative right enjoyed by a plaintiff; it does not apply to a plaintiff's allegation of use of excessive force absent a showing that the act was done to interfere with a separate state or federal constitutional right." *Justin v. City and County of San Francisco,* Slip Copy, 2008 WL 1990819 (Mag. Judge James), N.D.Cal., 2008, May 05, 2008.

The California jury instructions for this claim make clear that there are two separate elements – use of force and intent to interfere with another right – both of which must be alleged and proved. CACI No. 3025. Obviously, not every act of violence interferes with the separate exercise of a constitutional right (*e.g*., the right to vote). Conversely, not every constitutional violation requires violence. But Section 52.1 requires both. *City and County of San Francisco v. Ballard*, 136 Cal.App.4th 381, 408 (2006). Here, there is no evidence that the officers' use of force was coupled with any intent to interfere with the exercise of a constitutional right, and plaintiff's section 52.1 claim should be dismissed for this additional reason.

### VII. DEFENDANTS' STATE LAW IMMUNITIES BAR PLAINTIFF'S CLAIMS UNDER CIVIL CODE §§ 52.1

Defendants state law immunities also apply to plaintiff's claims for relief under California Civil Code sections 52.1. Under California law, the Government Code immunities trump a public entity's liability under other statutes unless otherwise provided. For example, the California Supreme Court has held that discretionary act immunity (Gov. Code § 820.2) bars a suit against a public official under the state's Fair Employment and Housing Act (Gov. Code § 12900 et seq.). *Caldwell v. Montoya*, 10 Cal. 4th 972, 989 (1995). The court stated the general rule that an immunity under the Tort Claims Act "cannot be abrogated by a statute which simply imposes a general legal duty or liability on persons, including public employees." *Id*. at 986. A statutory liability will only survive a public entity's immunity when there is "a clear indication of legislative intent that statutory immunity is withheld or withdrawn in the particular case." *Id*.

As shown above, defendants' immunity under Government Code section 821.6 applies to the injuries for which plaintiff seeks damages. Two courts have already held that the governmental immunities apply to the Unruh Civil Rights Act (Cal. Civil Code § 51 et seq.), which is a companion statute to the Bane Act. Relying on the California Supreme Court's holding in *Caldwell*, the California Court of Appeal in *Gates v. Superior Court*, 32 Cal. App. 4th 481 (1995), stated:

> Normally, governmental immunities apply to statutes outside the Tort Claims Act, which provide for liability. Further, we have read 117 legislative committee and caucus reports prepared since 1963 relating to Civil Code sections 51.7 and 52. Nothing in those 117 reports suggests that any damage immunity in the Tort Claims Act is inapplicable to an Unruh Act claim. *(Id.* at 513.)

A U.S. District Court for the Central District of California likewise applied Government Code sections 844.6 (immunity for injury to a prisoner) and 820.2 (discretionary act immunity) and the analysis in *Gates* to dismiss a prisoner's state law Unruh Civil Rights Act claim. See *Moore v. Baca*, 2002 WL 31870541 (C.D. Cal. Dec. 11, 2002).

Defendants' immunity under Government Code section 821.6 therefore applies to plaintiff's state law claim under the Bane Act.

## VIII. PLAINTIFF HAS NO EVIDENCE TO SUPPORT HER *MONELL* CLAIM AGAINST THE CITY OR CHIEF FONG

Plaintiff's Second and Third causes of action seek to hold San Francisco liable under 42 U.S.C. section 1983 for the violation of plaintiff's civil rights by the individual police officers. Local governments are not vicariously liable for the conduct of their employees under federal law. Local governments are subject to liability under 42 U.S.C. section 1983 only where an official policy or custom causes a constitutional tort. *Monell v. Dept. of Social Serv. of New York*, 436 U.S. 658, 690 (1987). A policy or custom giving rise to municipal liability cannot be established merely by identifying conduct by an employee that is attributable to the municipality. The plaintiff must prove that, through its deliberate conduct, the municipality was the "moving force" behind the alleged injury. *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997). Proof of isolated incidents of unconstitutional behavior by an employee is insufficient to establish a municipal policy or custom. *McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000). "Instead, it is when [the] execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injuries that [make] the government as an entity responsible under § 1983." *Monell*, 436 U.S. at 694.

Here, plaintiff alleges garden variety *Monell* claims typical to most lawsuits against police officers. The allegations are generic and lack specificity. The City and County of San Francisco is unaware of any policy or custom that would be the "moving force" behind any of plaintiff's alleged misconduct. More importantly, the City submits that the plaintiff has likewise failed to identify any policy or custom to which the complained-of conduct could be attributed.

Plaintiff makes generic allegations that San Francisco ratified the alleged misconduct of the officers (FAC ¶33) and that the City had a custom and practice of condoning misconduct (FAC ¶38), plaintiff fails to state with any specificity facts or details to support the allegations, nor has she developed any evidence during discovery that would substantiate these claims. Even if the allegations had merit – which they do not – this would not create a genuine issue of material fact to avoid summary judgment. Plaintiff must show that San Francisco made a "conscious, affirmative choice" to ratify the officers' alleged excessive force and false arrest in this incident. *Haugen v.*

*Brosseau*, 351 F.3d 372, 393 (9th Cir. 2003). A "single failure to discipline" an officer does not rise to the level of official ratification. *Id*. Nor would a city's failure to discipline for "both an earlier incident and the one underlying this action [be] sufficient evidence to defeat summary judgment on this issue." *Santiago v. Fenton*, 891 F.2d 373, 382 (1st Cir. 1989). The Court in *Santiago* found that, as a matter of law, failure to discipline for the underlying incident and an earlier one is not "evidence of a failure to discipline sufficiently widespread to reflect a municipal policy." *Id*. at 383.

Because the plaintiff lacks any evidence to support her claims for relief under *Monell*, San Francisco is entitled to partial summary judgment on these claims.

## IX. PLAINTIFFS LACK EVIDENCE TO SUPPORT A PUNITIVE DAMAGES CLAIM

Punitive damages are available where plaintiffs have sufficient evidence for a reasonable jury to conclude that the defendants have acted with malice or oppression. See generally *Dang v. Cross*, 422 F.3d 800 (9th Cir. 2005). In the present case, plaintiff lacks such evidence. Here, the evidence does not even show conduct that is objectively unreasonable. There is simply no the evidence of the bad intent required for a reasonable jury to impose a punitive damages award. See, e.g., *In re First Alliance Mortgage Co.*, 471 F.3d 977, 998 (9th Cir. 2006).

## CONCLUSION

For the reasons stated, the summary judgment motion should be granted.

Dated: July 25, 2008

          DENNIS J. HERRERA
          City Attorney
          JOANNE HOEPER
          Chief Trial Deputy

By:    s/*Sean F. Connolly*
          SEAN F. CONNOLLY
          Deputy City Attorney

          Attorneys for Defendant
          CITY AND COUNTY OF SAN FRANCISCO