## Page 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
---oOo---

ESTHER HWANG,

    Plaintiff,

vs.    Case No. C07-02718 MMC

CITY AND COUNTY OF SAN FRANCISCO, ET AL.,

    Defendants.

_____/

Deposition of
SUNG LIM
Tuesday, June 3, 2008

REPORTED BY: LESLIE CASTRO, CSR #8876

BONNIE L. WAGNER & ASSOCIATES
Court Reporting Services
41 Sutter Street, Suite 1605
San Francisco, California 94104
(415) 982-4849

## Page 2

INDEX

Deposition of SUNG LIM
Tuesday, June 3, 2008

                Page
EXAMINATION BY MR. CONNOLLY    5

Certified Questions:
    Page    Line

## Page 3

EXHIBITS

Deposition of SUNG LIM
Tuesday, June 3, 2008

(No exhibits were offered.)

## Page 4

1    BE IT REMEMBERED THAT, pursuant to Notice, and on
2    Tuesday, June 3, 2008, commencing at the hour of
3    10:38 o'clock a.m. thereof, at the OFFICE OF THE CITY
4    ATTORNEY, Fox Plaza, Seventh Floor, 1390 Market
5    Street, San Francisco, California 94102, before me,
6    LESLIE CASTRO, a Certified Shorthand Reporter in and
7    for the State of California, personally appeared
8                    SUNG LIM
9    Called as a witness by the Defendant, who, being by me
10   first duly sworn, was thereupon examined and testified
11   as hereinafter set forth.

13   APPEARANCES:
14       LAW OFFICES OF JOHN L. BURRIS, 7677 Oakport
15   Street, Suite 1120, Oakland, California 94621,
16   represented by BENJAMIN NISENBAUM, Attorneys at Law,
17   appeared as counsel on behalf of the Plaintiff.

19       OFFICE OF THE CITY ATTORNEY, Fox Plaza, Sixth
20   Floor, 1390 Market Street, San Francisco, California
21   94102, represented by SEAN F. CONNOLLY, Deputy City
22   Attorney, appeared as counsel on behalf of the
23   Defendant.

25                ---oOo---

**Page 5**

1   SUNG LIM
2   being first duly sworn, testified as follows:
3
4   EXAMINATION BY MR. CONNOLLY:
5
6   MR. CONNOLLY: Q  Good morning. Is it Ms. Lim?
7   A.  Yes.
8   Q.  Can you spell your name for the record,
9   please.
10  A.  First name, S-U-N-G. Last name, L-I-M.
11  Q.  And you are the wife of Daniel Hwang; is that
12  correct?
13  A.  Correct.
14  Q.  And your sister-in-law is Esther Hwang?
15  A.  Correct.
16  Q.  First of all, I spoke to you briefly before we
17  went on the record, and I want to put some things on the
18  record that we discussed.
19      My name is Sean Connolly. I'm a deputy city
20  attorney for the City and County of San Francisco. I
21  represent the City and several named police officers in
22  this lawsuit.
23      Present in the room also is Mr. Nisenbaum. He
24  represents Esther Hwang along with John Burris. You can
25  see there's a court reporter in the room who is taking

**Page 6**

1   down or transcribing everything that's discussed between
2   us.
3       There's a couple of things that I need to
4   point out.
5       As I understand, this is your first
6   deposition; is that correct?
7   A.  Yes.
8   Q.  First of all, you gave an oath just moments
9   ago.
10      Do you remember that?
11  A.  Yes.
12  Q.  And do you understand that oath requires you
13  to tell the whole truth?
14  A.  Yes, I do.
15  Q.  That oath that you gave is under the same
16  penalty of perjury that applies in a court of law.
17      Do you understand that?
18  A.  Uh-huh, yes.
19  Q.  Is that a "Yes"?
20      So the most important thing here is that you
21  tell the truth.
22  A.  Yes.
23  Q.  And as I indicated before, if I ask you a
24  question and you don't know the answer, just tell me you
25  don't know.

**Page 7**

1   A.  Sure.
2   Q.  If you have to guess at an answer or speculate
3   or make an educated guess, just let me know when you're
4   doing that and I'll ask follow-up questions to try to
5   narrow down what it is -- what your knowledge of the
6   things being asked about.
7       One of the most important things that I need
8   to outline for you to help facilitate this deposition is
9   that, as you can see, a reporter is taking down the
10  words between us. That means that you and I can't have
11  a conversation as though we would normally have a
12  conversation in the hallway or in a restaurant.
13      And although you can see me, you can see my
14  facial gestures and my hand gestures, and I can see you
15  and see your hand gestures and that you're nodding, the
16  reporter can't take down any of those gestures.
17  A.  Sure.
18  Q.  So it's very important that you articulate all
19  your responses. So if you're nodding your head "yes" or
20  you're nodding your head "no," make sure you say "yes"
21  or "no."
22      From time to time I'll look at you and see
23  that you're nodding or making some sort of physical
24  gesture and I'll say "Is that a 'yes' or is that a 'no.'"
25  That's not me being rude, that's just me reminding you

**Page 8**

1   to make sure that you state your answer verbally so the
2   court reporter can take it down.
3   A.  Sure.
4   Q.  Also, it's important that you speak up so the
5   court reporter can hear you.
6   A.  Okay.
7   Q.  It's important that you allow me to finish my
8   question before you start answering as it is important
9   for me to let you finish answering before I ask my next
10  question.
11  A.  Sure.
12  Q.  In normal conversation, frequently people
13  talking are anticipating what the question is before
14  it's finished and they answer it. And likewise, the
15  next question is asked before the last answer is
16  finished, et cetera, et cetera. But the court reporter
17  can't take two voices down at once. So we have to make
18  sure to let the other person finish.
19  A.  Sure.
20  Q.  Do you want a glass of water or anything?
21  A.  Yes, please.
22  MR. CONNOLLY: Mr. Nisenbaum?
23  MR. NISENBAUM: Absolutely.
24  MR. CONNOLLY: Q  At any point in time -- this
25  shouldn't be a long deposition. But at any point in

```
 1   Q.   And when was the last time you spoke with
 2   Henry Baba?
 3   A.   Last time, almost -- about a year ago. It was
 4   for a long time.
 5   Q.   And do you recall what the circumstances were
 6   that you spoke to him?
 7   A.   Why we --
 8   Q.   Why were you talking with him? What was going
 9   on that you spoke to him?
10   A.   It was about Daniel's car insurance. That
11   Henry bought the car from Daniel. So they were talking
12   about car insurance or registration or pink slip, things
13   like that. So he asked me -- he asked me if he could
14   get the pink slip or when he could get it. So I think
15   for right now he got everything that he wanted. It was
16   regarding the car.
17   Q.   So Henry bought a car from Daniel?
18   A.   Yes.
19   Q.   Do you know -- do you recall which car it was?
20   A.   CLK -- Mercedes CLK, silver color. Daniel was
21   driving the car before we got married. So he was trying
22   to sell the car and Henry wanted to buy it from him. So
23   he sold the car to him.
24   Q.   And so do you know -- do you have personal
25   knowledge whether or not the registration and title were
```

```
 1   ever delivered to Henry?
 2   A.   Yes.
 3   Q.   Were they?
 4   A.   Yes.
 5   Q.   Do you know what your husband's relationship
 6   is with Mr. Baba, whether it's good or bad?
 7   A.   I remember there was a business involved --
 8   Daniel's business involved with Henry. And there's a
 9   couple of times they were talking on the phone regarding
10   that.
11        Because the last couple of years we were
12   struggling with the business. We had -- he started a
13   movie business before we got married and we had a
14   mortgage company together. And they don't really go
15   well. So we were struggling with that financially for a
16   while.
17        So I think between business -- when -- what I
18   got told from Daniel was Henry invested in Daniel's
19   business and it didn't really happen and there was a lot
20   of struggle, we're struggling.
21        But it was a business before he got married
22   with me. So there's not really exactly 100 percent what
23   really exactly the relationship was.
24   Q.   Now, what -- do you run a business right now?
25   A.   Recently we opened a jewelry shop.
```

```
 1   Q.   And where is that?
 2   A.   Crocker Galleria, 50 Post.
 3   Q.   Who runs that, the day-to-day operations of
 4   that?
 5   A.   I do.
 6   Q.   And do you know Derrick Lee? Do you know a
 7   person named Derrick Lee?
 8   A.   Derrick Lee?
 9   Q.   Lee?
10   A.   I never heard of him.
11   Q.   A police officer.
12   A.   No.
13   Q.   Have you ever seen Esther, your sister-in-law,
14   drunk?
15   A.   No.
16   Q.   Do you know whether she was drunk when she
17   left The House of Prime Rib the evening you guys had
18   dinner?
19   A.   I don't think so.
20   Q.   And why do you say that?
21   A.   Because we didn't drink that much. I want to
22   make a note that even myself and Daniel -- let's say if
23   we want to drink and we don't want to drink in front of
24   our parents. Because in Korean culture, it's really
25   disrespect to parents. So I never drink. Even if I
```

```
 1   toast with my parents, I don't ever drink. It's the
 2   same way in Korean family.
 3   Q.   I'll represent to you that there has been
 4   sworn testimony in this case that Ms. Hwang drank a
 5   significant amount of alcohol at the restaurant.
 6        MR. NISENBAUM: I'm going to object to the
 7   relevance of the comment, Sean, because --
 8        MR. CONNOLLY: Make your objection, make it.
 9        MR. NISENBAUM: If you're going to do that, it's
10   incomplete.
11        MR. CONNOLLY: Make an objection with a legal basis
12   and let me conduct my questioning. You can ask
13   follow-up questions, if you want.
14        MR. NISENBAUM: Okay.
15        MR. CONNOLLY: So what's the legal basis for your
16   objection?
17        MR. NISENBAUM: The legal basis is that it was
18   incomplete, it's argumentative to the extent that it's
19   incomplete. And I think misrepresents the sum of the
20   testimony.
21        MR. CONNOLLY: You're manipulating the witness on
22   the record.
23        MR. NISENBAUM: I am --
24        MR. CONNOLLY: Yes. Your objection is noted.
25   Q.   And I'll ask you again: I'll represent to you
```

```
 1  here that there's been sworn testimony that Esther Hwang
 2  drank a significant amount of alcohol at the restaurant
 3  on the night of this incident and that she was
 4  intoxicated.
 5       And I'm asking you, having made that
 6  representation, is it your testimony here under oath
 7  that you didn't see her drink more than one sip of wine?
 8     A.   There was so many people watching while we're
 9  talking, while we're greeting each other, we haven't
10  seen each other in a long time. And with the one bottle
11  with the six people, and I remember I had some drink of
12  the glass. But normally, waiters or waitress pour very
13  little to share.
14       So I never saw her drinking like you described
15  right now. But when I saw her, I didn't see her
16  drinking like glass after glass. I didn't see her that
17  night. So I don't know before. I don't know after. At
18  the restaurant, I didn't see her drinking.
19     Q.   And I'll ask you one last time: Your
20  recollection of how many bottles of wine were ordered or
21  was it just one bottle?
22     A.   I think it's one bottle.
23     Q.   Is it possible there was more than one bottle?
24     A.   I don't think so.
25     MR. CONNOLLY: That's all I have. Thank-you.
```

BONNIE L. WAGNER & ASSOCIATES
(415) 982-4849                                33

```
 1  Mr. Nisenbaum might have follow-up.
 2     MR. NISENBAUM: I don't.
 3     (Whereupon, the deposition adjourned
 4  At 11:13 a.m.)
 5
 6
 7
 8               SUNG LIM
 9
```

BONNIE L. WAGNER & ASSOCIATES
(415) 982-4849                                34

```
 1  STATE OF CALIFORNIA      )
 2                           ) Ss.
 3  COUNTY OF CONTRA COSTA   )
 4
 5       I hereby certify that the witness in the
 6  foregoing deposition, named SUNG LIM, was by me duly
 7  sworn to testify the truth, the whole truth, and
 8  nothing but the truth in the within-entitled cause;
 9  that said deposition was taken at the time and place
10  therein stated; that the testimony of said witness was
11  reported by me,
12               LESLIE CASTRO,
13  A Certified Shorthand Reporter and disinterested
14  person, and was thereafter transcribed into
15  typewriting; and that the pertinent provisions of the
16  applicable code or rules of civil procedure relating
17  to the notification of the witness and counsel for the
18  parties hereto of the availability of the original
19  transcript of deposition for reading, correcting and
20  signing have been complied with.
21       And I further certify that I am not of
22  counsel or attorney for either or any of the parties
23  to said deposition, nor in any way interested in the
24  outcome of the cause named in said caption.
25       IN WITNESS WHEREOF, I have hereunto set my
```

BONNIE L. WAGNER & ASSOCIATES
(415) 982-4849                                35

```
 1  hand and affixed my seal of office the 14th day of
 2  June, 2008.
 3
 4
 5
 6              LESLIE CASTRO
 7              C.S.R. No. 8876
```

BONNIE L. WAGNER & ASSOCIATES
(415) 982-4849                                36

ERRATA SHEET

PAGE  LINE  CHANGE

---

ERRATA SHEET (CONTINUED)

PAGE  LINE  CHANGE

I, SUNG LIM, have made the following changes to my deposition taken in the matter of ESTHER HWANG vs. CITY AND COUNTY OF SAN FRANCISCO taken on June 3, 2008.

DATE:_____
SUNG LIM

---

CERTIFICATION OF WITNESS

I, SUNG LIM, hereby declare that I have read the foregoing testimony, and the same is true and a correct transcription of my said testimony except as I have corrected.

_____
Signature

_____
Date

---

BONNIE L. WAGNER & ASSOCIATES
COURT REPORTING SERVICE
41 SUTTER STREET, SUITE 1605
SAN FRANCISCO, CALIFORNIA 94104
(415) 982-4849

JUNE 20, 2008

SUNG LIM
1165 66th STREET
EMERYVILLE, CALIFORNIA 94608

RE: ESTHER HWANG vs.
    CITY AND COUNTY OF SAN FRANCISCO

DEAR MS. LIM:

YOU ARE HEREBY NOTIFIED THAT PURSUANT TO THE CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 2019(E), YOUR DEPOSITION IS AVAILABLE FOR YOUR REVIEW WITHIN 35 DAYS FROM THE DATE OF THIS LETTER.

IF YOU ARE REPRESENTED BY AN ATTORNEY IN THIS MATTER CONTACT YOUR ATTORNEY BEFORE CONTACTING THIS OFFICE.

DO NOT ASK THAT WE SEND YOU THE ORIGINAL DEPOSITION. STATE LAW DOES NOT ALLOW US TO DO SO.

YOURS VERY TRULY,


LESLIE CASTRO, CSR
BONNIE L. WAGNER & ASSOCIATES

CC: ORIGINAL TRANSCRIPT
    ALL COUNSEL