DENNIS J. HERRERA, State Bar #139669
City Attorney
JOANNE HOEPER, State Bar #114961
Chief Trial Attorney
SEAN F. CONNOLLY, State Bar # 152235
Deputy City Attorney
Fox Plaza
1390 Market Street, 6th Floor
San Francisco, California 94102-5408
Telephone:     (415) 554-3863
Facsimile:     (415) 554-3837
E-Mail:        sean.connolly@sfgov.org

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTHER HWANG,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, ET AL.<br><br>　　　　　Defendants. | Case No. C07-02718 MMC<br><br>**DEFENDANT CITY AND COUNTY OF SAN FRANCISCO, CHIEF OF POLICE HEATHER FONG, OFFICER SERNA AND OFFICER ARTIGA'S REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT**<br><br>Hearing Date:　September 12, 2008<br>Time:　　　　　9:00 a.m.<br>Place:　　　　Judge Maxine M. Chesney,<br>　　　　　　　Courtroom 7, 19th Floor,<br>　　　　　　　San Francisco, CA<br><br>Trial Date:　October 27, 2008 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I. PLAINTIFF'S *MONELL* CLAIM REMAINS UNPROVEN, DEMONSTRABLY FALSE, AND ENTIRELY UNSUBSTANTIATED ............. 1

    A. The San Francisco Police Department Has A Policy in Place to Identify Officers who Are Accused of Frequently Using Unnecessary Force. .......... 1

    B. The City and County of San Francisco Has A Policy in Place to Investigate and Discipline Officers who Use Force Outside of Department Policy. ................................................................................... 2

    C. Lawsuits Are Not Evidence of Misconduct or a *Monell* Violation. ............ 3

    D. The OCC Complaints Are Unsubstantiated Hearsay. ................................. 4

        1. A Monell Claim Based on Failure to Discipline Requires Notice of Similar Misconduct Occurring Before the Incidents with Plaintiff. ........................................................................................... 5

        2. Failure to Discipline or Investigate Misconduct that is Unrelated to Alleged Use of Excessive Force Does Not Establish Causation ........................................................................................ 6

        3. There Is No Evidence of a "Permanent and Well Settled" Practice of Failure to Discipline. ..................................................... 7

II. PLAINTIFF CANNOT DISPUTE THAT SHE WAS NOT DRUNK AS THE RECORD IS CLEAR SHE WAS DRUNK ............................................................. 9

    A. Qualified Immunity ..................................................................................... 10

III. PLAINTIFF'S CLAIMS UNDER 51.7 AND 52.1 FAIL AS A MATTER OF LAW ............................................................................................................ 10

    A. Plaintiff's Eighth Cause Of Action Under Civil Code 52.1 Fails Because There Is No Evidence That The Officers' Use Of Force Was Intended To Interfere With Another Right. .......................................... 10

IV. POLICE OFFICERS NOT ALLOWED TO FORCE DRUG TEST WITHOUT WARRANT OR CONSENT OF PLAINTIFF ................................. 11

CONCLUSION .................................................................................................................... 12

# TABLE OF AUTHORITIES

**Federal Cases**

*Andrews v. City of Philadelphia*
  895 F.2d 1469 (3d Cir. 1990) ..................................................................................7

*Bielevicz v. Dubinon*
  915 F.2d 845 (3d Cir. 1990) ....................................................................................5

*Board of County Comm'rs of Bryan County v. Brown*
  520 U.S. 397 (1997)............................................................................................3, 6

*Carbajal v. County of Nassau*
  271 F. Supp.2d 415 (E.D.N.Y. 2003) .....................................................................7

*Halvorsen v. Baird*
  146 F.3d 680 (9th Cir. 1998) ..................................................................................9

*Haugen v. Brosseau*
  351 F.3d 372 (9th Cir. 2003) ..................................................................................8

*Maiale v. Youse*
  2004 WL 1925004 (E.D.Pa. 2004) .........................................................................5

*Mariani v. City of Pittsburgh*
  624 F.Supp. 506 (W.D. Pa. 1986)...........................................................................8

*McDade v. West*
  223 F.3d 1135 (9th Cir. 2000) ................................................................................3

*Mercado v. City of Orlando*
  407 F.3d 1152 (11th Cir. 2005) ..............................................................................6

*Miqui v. City of New York*
  2003 WL 22937690 (E.D.N.Y. Dec. 5, 2003) ........................................................7

*Monell v. Dep't of Social Services*
  436 U.S. 658 (1978)...........................................................................1, 3, 4, 5, 6, 8

*Ott v. City of Mobile*
  169 F. Supp. 2d 1301 (S.D. Ala. 2001) ...........................................................5, 6, 7

*Patel v. Allstate Insurance Co.*
  105 F.3d 365 (7th Cir. 1997) ..................................................................................3

*Reynolds v. City. of San Diego*
  84 F.3d 1162 (9th Cir. 1996) ................................................................................11

*Santiago v. Fenton*
  891 F.2d 373 (1st Cir. 1989)...................................................................................8

*Scott v. Harris*
    127 S.Ct. 1769 (2007) ................................................................................................1, 9

*Thompson v. City of Los Angeles*
    885 F.2d 1439 (9th Cir. 1989) ...................................................................................7

**State Cases**

*City & City. of San Francisco v. Ballard*
    136 Cal.App.4th 381 (2006) ....................................................................................12

*Jones v. Kmart Corp.*
    17 Cal.4th 329 (1998) .........................................................................................11, 12

**State Statutes & Codes**

Cal. Civil Code § 51.7 ....................................................................................................11

Cal. Civil Code § 52.1 ...............................................................................................11, 12

Cal. Vehicle Code § 23612 .............................................................................................13

**San Francisco Statutes, Codes & Ordinances**

San Francisco City Charter § 4.127 .................................................................................2

Plaintiff's opposition to defendants summary judgment motion simply falls short of defeating the motion. (1) Plaintiff cannot manufacture a disputed genuine fact by citing to parts of the record that are dwarfed by a record that says otherwise. ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007)), and (2) plaintiff's attempt to defeat defendant's motion on the *Monell* cause of action fails because plaintiff does not make a factual or legal record to substantiate the claim. Further, plaintiff's reliance on untested, hearsay, allegations, to prove "notice" when she is required to proffer fact, findings, and declarations to support her claim, only serve to underscore how weak her opposition is on the *Monell* argument.

## I. PLAINTIFF'S *MONELL* CLAIM REMAINS UNPROVEN, DEMONSTRABLY FALSE, AND ENTIRELY UNSUBSTANTIATED

Plaintiff's sole argument in support of a *Monell* claim appears to be that the Department was on notice of Officer Serna's alleged acts of repeatedly violating the constitutional rights of others through use of excessive force, but turned a "blind eye."[1] Plaintiff's argument is both unsupported, and demonstrably false. The City and County of San Francisco has a policy in place that investigates complaints of excessive force by officers. The Department itself has a long time written internal policy in place that likewise identifies and counsels officers with a high frequency of complaints for excessive force. Officer Serna has been subject to those policies. Thus, plaintiff's claim that the Department has turned a "blind eye" is demonstrably false.

### A. The San Francisco Police Department Has A Policy in Place to Identify Officers who Are Accused of Frequently Using Unnecessary Force.

The San Francisco Police Department has a long standing written policy that complaints of misconduct be taken seriously and that such complaints be systematically reviewed in order to learn of officer behavior or patterns that need to be addressed. The policy is contained in the Department

---

[1] Other than raving about Officer Serna's alleged history of misconduct,plaintiff does not clearly delineate a specific *Monell* theory.

General Order 3.19 (Counseling of Members/Early Warning System) and 5.01(N) (Reporting and Investigating Use of Force), which addresses San Francisco Police officers who receive complaints of *excessive* force. (See Declaration of Lt. Daniel J. Mahoney ("Mahoney Decl.") in Support of Defendants Reply). The Department has also recently implemented an updated "Early Intervention System" policy that will replace the "Early Warning System." *Id*. The Early Warning System, which was in place during the Officer Serna's career, governs the Department's handling and response to officers who fall within its guidelines. *Id*. The policy identifies officers with a pattern of misconduct and requires an elevated course of counseling and training for those officers who meet certain criteria within the policy. *Id*. Officers who receive three or more complaints of excessive force within a six-month period come within the criteria of the Early Warning System, as do officers who receive four or more complaints of excessive force within a 12-month period. See Exhibit "B" to Mahoney Decl., the Policy.[2]

### B.     The City and County of San Francisco Has A Policy in Place to Investigate and Discipline Officers who Use Force Outside of Department Policy.

The City and County of San Francisco is committed by the City Charter to investigate citizen complaints against police officers through an independent watchdog agency. San Francisco City Charter §4.127, and Appdx. The Office of Citizen Complaints ("OCC") is charged with investigating citizen complaints concerning the conduct of on-duty police officers. *Id*. Each complaint received by the OCC is fully investigated by a staff of trained investigators. *Id*. See also Mahoney Declaration. Complaints of misconduct are not in and of themselves proof that such misconduct was committed. Mahoney Decl. Complaints themselves may be meritless, frivolous, mistaken, or otherwise without legal or factual basis. *Id*. Where a complaint is investigated and substantiated, the OCC will making a finding sustaining such complaint, and refer the officer for discipline. The officer may contest that finding through a Department or Police Commission hearing process. *Id*., City Charter, 4.127. Over his 13 year history as a patrolman in some of the highest crime areas of the City Officer Serna has received complaints of use of excessive force. All those complaints were investigated by an

---

[2] Officer's Serna's history under the Early Warning System, if any, is outlined in Mahoney Declaration, filed herewith under seal, as the information is a confidential personnel record.

independent agency. Nearly all of those investigations cleared Officer Serna of any wrongdoing or acting outside of Department policy.[3]

### C. Lawsuits Are Not Evidence of Misconduct or a *Monell* Violation.

Plaintiff's main offer of proof in support of her Monell theory appears to be that the Department should have been on notice as to an unconstitutional practice or policy simply because one of its police officers has been sued a lot over his 13 year career as a police officer. The argument is frivolous. Putting aside the fact that any beat patrolman working the mean streets of San Francisco is going to get sued sooner or later, the argument relies strictly on innuendo and hearsay allegations. Plaintiff makes no attempt to offer hard proof in the form of factual findings, declarations, or competent evidence of any kind.

None of the documents submitted by plaintiff assists her in meeting her burden for several reasons. First, hearsay evidence is inadmissible and cannot defeat summary judgment. Only admissible evidence may create a genuine issue of material fact. See *Patel v. Allstate Insurance Co.*, 105 F.3d 365, 367 n.1 (7th Cir. 1997). Second, there is no competent evidence that any of these incidents is similar to the claims in this case. A policy or custom giving rise to municipal liability cannot be established merely by identifying conduct by an employee that is attributable to the municipality. The plaintiff must prove that, through its deliberate conduct, the municipality was the "moving force" behind the alleged injury. *Board of County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 404 (1997). Proof of isolated incidents of unconstitutional behavior by an employee is insufficient to establish a municipal policy or custom. *McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000).

In support of her argument plaintiff submits a small stack of lawsuits and other miscellaneous court documents (case management conference statements, court dockets, *etc*) from unrelated cases where Officer Serna was named as a defendant. It is unclear how these unproven, self serving allegations weigh into plaintiff's *Monell* argument as plaintiff makes no effort to explain their

---

[3] Officer Serna's Complaint History is filed under seal, as it is confidential personnel information.

relevancy.[4] The evidence of past or present lawsuits is of little to no value into the inquiry of whether their existed some *Monell* violation. Plaintiff offers no legal authority to support her claim that evidence of lawsuits are a basis for *Monell* liability. The complaints (some of which are more than 10 years old) themselves are unproven, unverified, hearsay allegations. Additionally, plaintiff fails to note the outcome of any of these suits, nor does she explain Officer Serna's role in the lawsuit, other than being a named defendant. There is no evidence offered by plaintiff that Officer Serna was even served with these lawsuits, let alone whether they resulted in any factual finding that would lend credence to her Monell argument.[5]

Unsupported allegations and innuendo simply do not substantiate plaintiff's *Monell* claim.

### D.     The OCC Complaints Are Unsubstantiated Hearsay.

In support of her opposition plaintiff also cites to "24 internal investigations into Officer Serna" (opposition, page 21, line5) ordered by Judge Larson. Plaintiff's reference to such information is both troubling and problematic.[6] Plaintiff fails to explain that the Order she is referring to is in another case (*Oliver v. City and County of San Francisco*, C07-2460 (JL)), completely unrelated to this one. The Order by Larson, regarding discovery of personnel records of Officer Serna, in that case is subject to a PROTECTIVE ORDER, which prevents disclosure and public discussion of that information. While undersigned counsel has agreed in principle with plaintiff's counsel to use Judge Larson's Order regarding personnel records (in *Oliver*) as a guide to a stipulation regarding personnel records for use in this case (subject to a protective order), the agreement has neither been perfected or acted upon. Undersigned counsel has not seen the records ordered produced in the *Oliver* case.

Furthermore, plaintiff fails to explain that the "investigations" she refers to are the automatic investigation that ensue pursuant to a citizen complaint, which in this case are over the course of an

---

[4] Two of the legal complaints relied on by plaintiff are complaints filed by other clients of plaintiff's own counsel. Something seems grossly self-serving where plaintiff's counsel relies on his own manufactured complaints in other cases against the same officer as evidence of a *Monell* violation.

[5] Indeed, one of the lawsuits relied on by plaintiff is one where Officer Serna was factually exonerated by a federal jury. (*Lewis v. City and County of San Francisco,* C98- 0351 THE).

[6] It is also unclear: what plaintiff is referencing is investigations by OCC pursuant to citizen complaint.

approximate 13-year span of Officer Serna's career as a "beat cop."  Obviously, most police officers working the streets in a major metropolitan city will incur complaints through the course of their careers by virtue of the fact that they interact with a high volume of people in high crime areas.  Not to mention San Francisco's rich history of challenging authority.

Lastly, plaintiff offers no evidence that any of these complaints resulted in any finding against Officer Serna.  While all were investigated by an independent police watch dog agency, there is certainly no evidence suggesting that the Department had an unconstitutional policy or practice.

### 1. A Monell Claim Based on Failure to Discipline Requires Notice of Similar Misconduct Occurring Before the Incidents with Plaintiff.

Case law, as well as common sense, holds that an unconstitutional policy, custom or practice of failing to reign in rogue officers could only be a cause in fact of any constitutional violation if a failure to discipline occurred before the violation.  In other words, the plaintiff must show that the municipal defendant was on notice of prior violations and that they did nothing about it.  Plaintiff must "establish a municipal custom coupled with causation – i.e., that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury." *Bielevicz v. Dubinon,* 915 F.2d 845, 851 (3d Cir. 1990) (emphasis added); see also *Ott v. City of Mobile*, 169 F. Supp. 2d 1301, 1313-14 (S.D. Ala. 2001) (to establish causation "flowing from a city's failure to investigate or discipline breaches of policy by its police officers, the plaintiff must show that prior breaches of policy resulted in constitutional violations" (emphasis added)).

Accordingly, to show a policy, custom or practice caused his injury, a plaintiff must submit evidence that the municipal defendant had prior notice that a constitutional violation was likely to occur, and acted with deliberate indifference to this risk.  "A police department's failure to discipline an officer after multiple complaints have been lodged against him can result in municipal liability when that same officer then violates a plaintiff's civil rights, particularly in cases where the prior conduct which the officer engaged in is similar to the conduct which forms the basis for the suit." *Maiale v. Youse*, 2004 WL 1925004 (E.D.Pa. 2004) (finding that an internal police study critical of the discipline meted out to officers and two prior unsustained complaints of excessive force against

an individual defendant "do not create a genuine issue of fact as to whether the City was deliberately indifferent to the risk that [the officers] would violate the Constitutional rights of the citizens they came into contact with.").

Plaintiff makes no attempt to argue this legal theory and certainly offers no evidence.

### 2. Failure to Discipline or Investigate Misconduct that is Unrelated to Alleged Use of Excessive Force Does Not Establish Causation.

Critical to the inquiry of whether a Monell violation exists is the fact that the other misconduct relied upon by plaintiff must involve similar facts and evidence of a constitutional violation. In this case, where plaintiff claims use of unconstitutional force, plaintiffs must show that their injuries were caused by widespread pattern of failing to discipline unconstitutional use of force. As the Supreme Court stated in *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 407 (1997), municipal liability "may be proper where it can be shown that policymakers were aware of, and acquiesced in, a pattern of constitutional violations." It is not enough to show that the Department ignored the officer defendants' prior violations of Department policy if that misconduct did not rise to the level of a constitutional violation.

Courts have routinely held that there is no causal nexus between prior misconduct and a later allegation of excessive force unless the prior misconduct was factually similar to the plaintiff's complaint. A *Monell* claim requires at a minimum evidence of "incidents involving similar facts." *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005).

The district court in *Ott v. City of Mobile*, 169 F. Supp. 2d 1301 (S.D. Ala 2001), confronted and rejected a similar attempt by a civil rights plaintiff to bootstrap violations of department policy into municipal liability for excessive force. In that case, a police officer shot and killed a man while intoxicated. Plaintiff attempted to show an official custom or practice by arguing that "the City was aware that police officers have engaged in excessive drinking while carrying firearms, in violation of City policy, yet the City has never disciplined an officer for doing so." *Id*. at 1313. The court held that drinking while armed – although dangerous and a violation of city policy – was not a constitutional violation and therefore it did not show that the city had acquiesced in a pattern of excessive force:

> [T]o establish either fault or causation flowing from a city's failure to investigate or discipline breaches of policy by its police officers, the plaintiff must show that prior breaches of policy resulted in constitutional violations. Here, as the City points out, the plaintiff has no evidence that the City failed to investigate the allegations, or that it failed to do anything once it was investigated (*Id*. at 1313-14.)

*Miqui v. City of New York*, 2003 WL 22937690 (E.D.N.Y. Dec. 5, 2003), is also on point. In that case, the court considered whether plaintiff had shown that New York City "pursued a policy or custom of failing to meaningfully supervise, discipline and terminate auxiliary officers for serious infractions and condoned the use of excessive force." Id. at *6. Specifically, plaintiffs argued that by failing to discipline officers for misdeeds such as unauthorized excursions in police cars, the municipal defendant had created an "environment of apathy towards malfeasance by auxiliary officers."

As did the court in *Ott*, the Eastern District of New York court held that misconduct which does not rise to the level of a constitutional violation cannot form the basis for municipal liability on a theory of failure to discipline:

Thus, plaintiffs present no evidence of prior notice that is necessary to establish causation. See *Carbajal v. County of Nassau*, 271 F. Supp. 2d 415, 422 (E.D.N.Y. 2003) (municipal liability "can be proven with evidence that the municipality was given notice of the possibility that its employees were violating citizens' constitutional rights, and . . . failed to discipline subordinates who violated civil rights" (emphasis added)).

### 3. There Is No Evidence of a "Permanent and Well Settled" Practice of Failure to Discipline.

Courts make clear that a custom or practice cannot be inferred absent evidence of a widespread pattern of constitutional violations of long standing. "Consistent with the commonly understood meaning of custom, proof of random acts or isolated events are insufficient to establish custom. Only if a plaintiff shows that his injury resulted from a 'permanent and well-settled' practice may liability attach for injury resulting from custom." *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443-44 (9th Cir. 1989); accord *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) ("A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well-settled' as to virtually constitute law.").

Plaintiff's evidence fails to establish a well settled and permanent practice of failing to discipline officers for using excessive force. In addition to the lack of evidence on causation, the purported failure to discipline Officer Serna for the various excessive force incidents asserted in the opposition does not show an unconstitutional policy. First, all of the incidents relate to a single officer – Officer Serna—there is no attempt made by plaintiff to argue the existence of a policy with illustrations of the purported policy vis-à-vis other officers.

As in this case, plaintiff in *Mariani v. City of Pittsburgh*, 624 F.Supp. 506 (W.D. Pa. 1986), alleged that the city had a policy of condoning the use of excessive force by its police officers by repeatedly refusing to discipline the officers involved in an alleged assault and retaining those officers on the force knowing they were dangerous. *Id*. at 511. The plaintiff that case produced evidence that each of the officers involved in the incident had one prior complaint against him for violent behavior. The court held this insufficient because "[i]solated events will not establish a pattern of abusive behavior." *Id*. at 511. The court went on to note:

> Allowing an inference that, because neither officer received discipline as a result of his only prior complaint, the City has tacitly authorized the use of excessive force would be absurd. Certainly, we can not assume that each complaint filed by an individual who has been arrested against his will presents a valid allegation of police misconduct. Likewise, we can not conclude that two previous complaints alleging use of excessive force represent the type of widespread abuse contemplated in *Monell*. (*Id*. at 511-12.)

Furthermore, plaintiff's argument has no legs because Officer Serna has been subject to the policies of the department regarding discipline and retraining.

Plaintiff cannot dispute that a "single failure to discipline" an officer does not rise to the level of an official custom or practice. *Haugen v. Brosseau*, 351 F.3d 372, 393 (9th Cir. 2003). And two failures to discipline also falls short of the requisite showing. See *Santiago v. Fenton*, 891 F.2d 373, 382 (1st Cir. 1989). The Court in *Santiago* found that, as a matter of law, two instances of lack of discipline were not "evidence of a failure to discipline sufficiently widespread to reflect a municipal policy." *Id*. at 383. Even if plaintiff argues that Serna should have been disciplined when he was not, she has presented no proof of those instances.

## II. PLAINTIFF CANNOT DISPUTE THAT SHE WAS NOT DRUNK AS THE RECORD IS CLEAR SHE WAS DRUNK

Plaintiff takes great pains in attempting to prove she wasn't drunk when the record suggests overwhelmingly that she was. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007). Additionally, plaintiff's own testimony about how drunk she was when she was admittedly drinking should be viewed with distrust. *Halvorsen v. Baird*, 146 F.3d 680 (9th Cir. 1998) is instructive. In *Halvorsen* the plaintiff in a §1983 case claimed that he was not drunk at the time of the incident. The trial court allowed expert evidence that plaintiff was "an alcoholic, and that one typical characteristic of alcoholics is denial that they have been drinking when they plainly have. The judge said that this had a bearing on whether [plaintiff's] testimony that he was not drunk could be subjectively truthful, yet false." *Id* at 686.

Secondly, plaintiff in her opposition blatantly ignores the sworn testimony of her then boyfriend Nathan Flores who was with plaintiff the entire evening and who gives a detailed account of both the amount she drank and how drunk she was.

Plaintiff's attempt to dispute her drunken state by relying on the testimony of her brother, sister, and friend Buchwald are misleading. Aside from the obvious biases of her brother, Daniel Hwang, he affirmatively saw plaintiff drink wine, but does not know for certain how much she drank, nor was he watching her the entire time to exclude the possibility of her drinking. (See plaintiff's Exhibit "B" to Opposition, Deposition of Daniel Hwang at pages 28-29) Likewise, sister in law cannot dispute that plaintiff was not drinking. Plaintiff's reliance on her friend Mirko Buchwald to say she wasn't drunk is also far-fetched. As the doorman of the club plaintiff and her boyfried visited before the incident, Buchwald had only limited opportunity to observe her. Furthermore, he is her personal friend, and self defense instructor— his testimony is biased. More interesting is the fact that Buchwald contradicts plaintiff's own testimony about "jaywalking" in front of the arresting police officer: he is certain she did. (See plaintiff's Exhibit "D" to Opposition, Deposition of Mirko

Buchwald at page 56:2-5). The fact is significant as it bolsters defendants probable cause argument in their opening brief.

### A. Qualified Immunity.

Despite plaintiff's attempt to dispute the fact of her drunkeness, the officers are still entitled to qualified immunity on the arrest as they had ample evidence before them to lead them to reasonably believe that she was drunk.

### III. PLAINTIFF'S CLAIMS UNDER 51.7 AND 52.1 FAIL AS A MATTER OF LAW

Plaintiff's opposition fails to acknowledge or respond to defendant's legal argument.

Plaintiff claims that defendants actions "was [sic] motivated by racial prejudice against plaintiff" because she was "readily recognizable as Asian American." (FAC 57.) However, there is no evidence in the case that the officers acted in any way that was motivated by racial prejudice. Plaintiff's opposition argues that the police were gender biased based on a derogatory remark attributed to one or both of the police officers.[7] However, plaintiff's does not allege gender bias in her complaint—she instead alleges "racial prejudice." A claim under Civil Code section 51.7 requires evidence that the challenged conduct was "committed … on account of" a protected characteristic. Plaintiff can point to no evidence that would tie defendants' conduct to her race. The claim is simply unfounded and should be dismissed.

### A. Plaintiff's Eighth Cause Of Action Under Civil Code 52.1 Fails Because There Is No Evidence That The Officers' Use Of Force Was Intended To Interfere With Another Right.

Plaintiff alleges that defendants violated Civil Code §52.1, "in that they interfered with plaintiff's exercise and enjoyment of her civil rights, through use of wrongful and excessive force, and failure to make any proper or reasonable detention of said plaintiff." (FAC 61). The claim fails.

Plaintiff must show both "threats, intimidation and coercion" and an interference or attempted interference with a constitutional right. See *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 334 (1998) (§ 52.1 requires "an attempted or completed act of interference with a legal right, accompanied by a

---

[7] Not only do the officers deny the remark, witness Ainsworth, and plaitiff's friend Buchwald deny hearing such a remark.

form of coercion"). Plaintiff wraps these separate elements into one, claiming that by using excessive force under the Fourth Amendment, officers interfered with plaintiff's right to remain free from excessive force under the Fourth Amendment.

To sue under the Bane Act one must point to a substantive right violated by use of threat or intimidation. *Reynolds v. City. of San Diego*, 84 F.3d 1162, 1170 (9th Cir. 1996). Plaintiff fails to allege any separate intent or act of threat, intimidation, or coercion that caused the alleged constitutional violations. See *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 334 (1998) (holding that section 52.1 requires "an attempted or completed act of interference with a legal right, accompanied by a form of coercion"); *City & City. of San Francisco v. Ballard*, 136 Cal.App.4th 381, 407 (2006). Plaintiff does not allege that the officers intended by their use of force to interfere with a separate, affirmative right enjoyed by plaintiff. Plaintiff's 52.1 clearly fails.

The California jury instructions for this claim make clear that there are two separate elements – use of force and intent to interfere with another right – both of which must be alleged and proved. CACI No. 3025. Section 52.1 requires both. *City and County of San Francisco v. Ballard*, 136 Cal.App.4th 381, 408 (2006). Here, there is no evidence that the officers' use of force was coupled with any intent to interfere with the exercise of a constitutional right, and plaintiff's section 52.1 claim should be dismissed for this additional reason.

### IV. POLICE OFFICERS NOT ALLOWED TO FORCE DRUG TEST WITHOUT WARRANT OR CONSENT OF PLAINTIFF

Plaintiff argues that "there is no evidence of any breath or blood test to show that plaintiff was intoxicated" (Opposition Brief, page 14, line 18). The argument is disengenuous, misleading and contrary to law as it suggests the police officers could have obtained a blood or breath test to show plaintiff was intoxicated. Such tests are not allowed under California law, and are generally violative of the Fourth Amendment without a warrant. State and federal laws generally discourage police from unilaterally poking suspects with needles in order to obtain incriminating evidence, or detaining them, strapping them down, and calling a technician in to do the deed. The only circumstances undersigned counsel is aware of that allows such a procedure is under the implied consent laws for obtaining a drivers license and driving a vehicle. See Cal. Vehicle Code §23612. Plaintiff's argument should be

1 disregarded.  Irrespective, the arresting authorities had ample evidence of plaintiff's intoxication to
2 arrest her.

## CONCLUSION

For the reasons stated, the summary judgment motion should be granted.

Dated: August 29, 2008

DENNIS J. HERRERA
City Attorney
JOANNE HOEPER
Chief Trial Deputy


By: ___s/*Sean F. Connolly*___
    SEAN F. CONNOLLY
    Deputy City Attorney

Attorneys for Defendant CITY AND COUNTY OF SAN FRANCISCO